IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PATRICIA ANN MARIE B,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security,<br><br>　　　　　　　Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:21-cv-304 DBB DBP<br><br>Judge David Barlow<br><br>Chief Magistrate Judge Dustin B. Pead |

This case is referred to the undersigned from Judge David Barlow based upon 28 U.S.C. § 636(b)(1)(B). (ECF No. 12.) Before the court is Plaintiff Patricia Ann Marie B's Motion for Review of Agency Action.[1] (ECF No. 18.) Plaintiff appeals the Commissioner's decision denying her application for Child's Insurance Benefits under Title II, and Supplemental Security Income under Title XVI of the Social Security Act. Having considered the parties' briefs, the administrative record, and relevant law, the undersigned RECOMMENDS that the Commissioner's decision be affirmed.

BACKGROUND

Plaintiff, born on August 4, 1994, alleges disability on November 2015, when she was 21 years old due to anxiety, depression and panic attacks. After her application was denied initially, she sought a hearing before an Administrative Law Judge (ALJ). The ALJ followed the agency's five-step sequential evaluation process in determining whether Plaintiff was disabled.[2] The ALJ

---

[1] Based on privacy concerns regarding sensitive personal information the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037.

[2] *See* 20 CFR 404.1520(a) (describing the five-step evaluation process); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework the Social Security Administration uses to determine disability).

found Plaintiff has the severe impairments of major depressive disorder, generalized anxiety disorder, social anxiety disorder, and bilateral carpal tunnel syndrome. (Tr. 16.) After determining Plaintiff had the residual functional capacity (RFC) to perform a full range of work with certain non-exertional limitations,[3] the ALJ ultimately found that Plaintiff was capable of simple, low stress work, which involved working with people only occasionally. Based on the testimony of a vocational expert, representative occupations that Plaintiff could perform include cleanup worker, automobile detailer, and routing clerk. (Tr. 23.)

Following the ALJ's decision, Plaintiff sought review before the Appeals Council who granted her request for review. The Appeals Council corrected the ALJ's decision concerning the nature of Plaintiff's claims and issued its own decision finding Plaintiff not disabled. (Tr. 4-8.) This decision then became subject to judicial review. *See* 20 C.F.R. § 404.918; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir.2003). Plaintiff seeks review of the Commissioner's decision asserting multiple errors.

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence

---

[3] The limitations include "simple, unskilled work in a low stress work environment, such as low volume, low production level type work which requires interaction with coworkers and public no more than 1/3 of 8-hour workday." (Tr. 18.)

as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax,* 489 F.3d at 1084 (quotations and citation omitted). As noted by the Supreme Court, "an ALJ's factual findings … 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek,* 139 S.Ct. at 1153 (quoting 42 U.S.C. § 405(g)). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart,* 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

## DISCUSSION

Claimant argues the ALJ failed to properly analyze or weigh the opinion of Leah Harter, CMHC, LPC; did not assign proper weight to treating sources Julia Winterton, CMHC, and Dr. Jay Nicolas; assigned improper weight to consultive source Dr. John Hardy; and failed to provide any discussion regarding her obesity. In essence, Plaintiff's arguments can be boiled down to a disagreement with how the opinion evidence was weighed, and a failure to address her obesity. Because the Appeals Council adopted the ALJ's RFC findings, these arguments are asserted against the Appeals Council decision.[4]

### a. The court finds no error in the ALJ's evaluation of the evidence

Claimant argues the ALJ erred by failing to properly evaluate the opinion evidence in the record in accordance with the regulations. Because Plaintiff applied for benefits prior to March

---

[4] Plaintiff raises challenges to the ALJ's decision although the Appeals Council decision is the final decision subject to review. Because the Appeals Council adopted the ALJ's RFC finding, the distinction between the ALJ's decision and the Appeals Council decision is immaterial for purposes of the court's review. For ease of reference and consistency with Plaintiff's briefing, the court refers to the ALJ's decision throughout this opinion.

27, 2017, the prior regulations apply in considering opinion evidence and acceptable medical sources. *See* 20 C.F.R. § 404.1527 (setting forth the rules for evaluating medical opinions for claims filed before March 27, 2017).

### (i) The opinions of Leah Harter, CMHC, LPC

Plaintiff first takes issue with the ALJ's failure to explicitly consider the opinion of Leah Harter. Ms. Harter is considered an "other source" and not an "acceptable medical source" under the regulations. *See* 20 C.F.R. § 404.1527(f). The evaluation of opinions from such sources are considered differently than those from an acceptable medical source.

Ms. Harter opined that Plaintiff exhibits a "marked" avoidance of social situations and assessed a GAF score of 40-45.[5] "The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012); *see also* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed.2000). A score 41-50 is indicative of serious symptoms, including possible suicidal ideation.

Plaintiff argues Ms. Harter's opinions are consistent with Dr. Hardy's opinions, an acceptable medical source, so it was error to omit discussion of her opinions and the GAF score. The court finds Plaintiff's position unpersuasive. As set forth by the governing regulations, there is no requirement to discuss Ms. Harter's opinions. Rather, as noted by the Tenth Circuit, in a case of a nonacceptable medical source, such as Ms. Harter, the ALJ's decision is sufficient if it permits the court to "follow the adjudicator's reasoning." SSR 06–03p, 2006 WL 2329939, at *6; *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012). Here the ALJ addressed Dr.

---

[5] "

Hardy's GAF score of 50 to 55 giving it little weight because Dr. Hardy's opinion was vague as to the Plaintiff's actual functioning and "GAF scores only record a short period in time and include factors not determinative of disability." (Tr. 21.) This is sufficient for the court to follow the ALJ's reasoning and further discussion of Ms. Harter's opinions would not change this analysis.

Next, there is no requirement for an ALJ to discuss a low GAF score. *See, Kearns v. Colvin*, 633 F. App'x 678, 682 (10th Cir. 2015) ("An ALJ's failure to conduct a comparative analysis and weigh conflicting GAF evidence does not mandate reversal."); *Zachary v. Barnhart*, 94 F. App'x 817, 819, 2004 WL 790300, at *2 (10th Cir. 2004) (noting that while a GAF score of 45 "may indicate problems" it is "not necessarily related" to the ability to hold a job and without any further narrative explanation a GAF rating does not support an impairment seriously interfering with an ability to work); *Lopez v. Barnhart*, 78 F. App'x 675, 678, 2003 WL 22351956, at *2 (10th Cir. 2003) ("Contrary to claimant's contention, a GAF score of 40 may indicate problems that do not necessarily relate to the ability to hold a job."); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241, 2002 WL 27315 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Therefore, Plaintiff's arguments concerning Ms. Harter fail.

> **(ii)  The ALJ did not err in the weight assigned to treating sources Julia Winterton, CMHC and Dr. Jay Nichols**

The ALJ gave little weight to the opinions of Dr. Nicholas and treating source Julia Winterton, CMHC. (Tr. 22.) Plaintiff takes issue with this assessment arguing Dr. Nicholas should have been given more weight and references the treating physician standard. A treating physician's opinion is given particular weight because of their "'unique perspective to the

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)). To be considered a treating physician, a provider must have a relationship consisting of both duration and frequency with a claimant. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

      The threshold question is whether Dr. Nichols is a "treating physician" within the meaning of the regulation. If so, then his opinions are entitled to a presumption of controlling weight. *See* 20 C.F.R. § 416.927. Plaintiff sets forth the treating physician standard but offers little in the way of proof regarding a longstanding treating relationship consisting of both duration and frequency. Plaintiff cites to an opinion from December 2017, in which, Dr. Nichols detailed Plaintiff's long history of mental health issues. The ALJ specifically noted Dr. Nichols' opinion from June 2018, listing him as "one of claimant's treating sources". (Tr. 22.) The court has reviewed the record and finds it does not support a treating physician designation for Dr. Nichols. It is lacking in duration and frequency. *See* 20 C.F.R. § 416.927(d)(2)(i), (ii) (in determining whether a physician's opinion is entitled to controlling weight, the Social Security Administration regulations look to the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship."). As such Dr. Nichols opinion is not entitled to special weight. *See Doyal*, 331 F.3d at 763.

In assigning little weight to Dr. Nichols' opinion the ALJ pointed to inconsistencies in Dr. Nichols' opinion, Plaintiff's ability to work independently as demonstrated by a trip to Africa for two weeks on a religious mission, activities of daily living, and her responsiveness to medication. The record supports the ALJ's reasoning. For example, Dr. Nichols' opinion from June 2018 primarily consists of a "check the box form" with added notations such as the "patient has recurrent worries and anxiety which can be quite distracting and adversely affect memory" and the patient "has a history of social anxiety which makes it difficult to function in new social situations." (Tr. 1074-77.)

The ALJ assigned little weight to Julia Winterton's opinions for similar reasons as those for Dr. Nichols. She also used a "check the box form" with intermittent narrative. The ALJ's analysis of her opinions was sufficient under the relevant regulations. Thus, the court finds no reason to disturb the ALJ's findings as to either of these treating sources.

**(iii)**      **The weight given by the ALJ to consultative source Dr. Hardy**

After a psychological consultative examination, Dr. Hardy assigned Plaintiff a GAF score of 50-55[6] and diagnosed Plaintiff with a panic disorder along with a possible dependent personality disorder. The ALJ assigned Dr. Hardy little weight and largely disregarded the GAF score noting its limitations. Plaintiff asserts this was error. The undersigned disagrees. As mentioned previously, a GAF score without more is not a basis for remand. Moreover, a close reading of Dr. Hardy's report does not support the severity of Plaintiff's alleged limitations. For example, intelligence testing indicated Plaintiff's functioning to be in the "average to high average range or better." (Tr. 548.) And despite Plaintiff's reported anxiety, Dr. Hardy noted

---

[6] A GAF score of 51–60 indicates, "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." A GAF score of 41-50 indicates more serious symptoms. *Keyes-Zachary*, 695 F.3d at 1162.

Plaintiff's hobbies that she was proud of and a "two-week mission to Africa without her mother and only knowing one person." *Id.* In short, the undersigned finds the ALJ's decision to assign Dr. Hardy little weight is supported by the record.

### b. The ALJ did not err in failing to explicitly address Plaintiff's obesity

Plaintiff's final allegation of error centers on a failure to discuss her obesity. As noted by Plaintiff, SSR 02-1P gives guidance on evaluating claims involving obesity. That section provides that "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems." Titles II & Xvi: Evaluation of Obesity, SSR 02-1P, 2002 WL 34686281, at *3 (S.S.A. Sept. 12, 2002). Yet, the "fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have [certain] impairments. It means that they are at greater than average risk for developing [certain] impairments." *Id.* "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Obesity is evaluated based on the information in the record.

Here, Plaintiff did not allege obesity as a disabling impairment. Although the record indicates that obesity may have caused some inhibition by Plaintiff to interact with others, it did not have a disabling effect. The Tenth Circuit has stated that "[o]ur case law makes clear that a diagnosis of a condition does not establish disability. The question is whether a person's impairment significantly limits his ability to engage in substantial gainful activity." *Madrid v. Astrue,* 243 F. App'x 387, 392 (10th Cir. 2007) (citing *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir.1988)). In short, the medical evidence does not a indicate Plaintiff's obesity was a "physical impairment imposing an additional and significant work-related limitation of function." Titles II & Xvi: Evaluation of Obesity, SSR 02-1P, 2002 WL 34686281, at *5

(S.S.A. Sept. 12, 2002). Additionally, to the extent that obesity had a negative impact on Plaintiff's interactions with the public, this was largely accounted for in the ALJ's RFC by limiting Plaintiff's interaction with both coworkers and the public. The court finds no error here.

## RECOMMENDATION

Based upon the forgoing, the court RECOMMENDS that the district court AFFIRM the Commissioner's decision.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 25 August 2022.

_____
Dustin B. Pead
United States Magistrate Judge